IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, October 17, 2003

## STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES, v. SJMW, IN THE MATTER OF: DJL, A CHILD UNDER 18 YEARS OF AGE

**Direct Appeal from the Juvenile Court for Hamilton County**
**No. 173,787      Hon. Suzanne Bailey, Judge**

**FILED NOVEMBER 24, 2003**

**No. E2003-00519-COA-R3-PT**

The mother's parental rights were terminated by the Trial Judge. Mother has appealed. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

John A. Shoaf, Chattanooga, Tennessee, for Appellant.

Paul G. Summers, Attorney General and Reporter, and
Elizabeth C. Driver, Assistant Attorney General, Nashville, Tennessee, for Appellee.

**OPINION**

In this action to terminate the parental rights of SJMW ("mother") to the minor child, DJL, (date of birth 5/12/90), the Trial Court terminated the mother's parental rights on the following statutory grounds:

1.      failure to substantially comply with the plan of care; and

2.      that the child had been removed for more than six months, and the conditions requiring removal still persisted and would not likely be remedied in the near future, and continuation of the parent/child relationship diminished the child's chances for integration into a permanent home.

*See* Tenn. Code Ann. §36-1-113(g). Additionally, the court found that terminating mother's parental rights was in the child's best interest.

On appeal, mother argues that her parental rights should not have been terminated, because there was no clear and convincing evidence of the grounds. Regarding compliance with the plan of care, mother had very discrete responsibilities under the plan, including:

1. mother needed to provide DCS with psychological and parenting assessments, with recommendations for correcting past problems, and to demonstrate that she had followed their recommendations.

2. mother was required to provide rent receipts for six months of housing, and check stubs for six months of employment.

3. mother was also required to go through counseling.

The DCS worker testified that mother had not complied with any of these responsibilities, but more importantly, mother admitted she had not complied as well. Mother testified that she had gone through some counseling on her own and in prison, but testified that she had waited on an appointment with a new counselor for several months, and had just started in counseling by the final trial date. Mother admitted that she had worked at her current job for only three months, and she had no rent receipts because she was living with a friend. Further, she admitted that she had gotten no assessments or recommendations as required, but testified that she had undergone intensive counseling while in prison. The mother testified that she had very recently made some attempts at compliance after getting out of prison, but the fact remains that the child has been in custody for two years (during which time the mother was in prison for a total of seven months) and that little had been done toward complying with the plan.

Further, the mother testified that she understood her responsibilities under the plan, and understood what she needed to do. She explained that she was attempting to comply with the plan and make positive changes, but was limited due to her economic condition and the time frame involved. However, there is clear and convincing evidence that the mother failed to substantially comply with the plan.[1]

The other ground which the Trial Court relied upon was that the child had been in custody for more than six months, that the conditions leading to removal still persisted, and that there was little likelihood they would be remedied in the near future. Mother testified that she had gotten a job and kept it for three months, that she had a home with a friend and was on the waiting list for subsidized housing. The mother testified that she had undergone counseling, alcohol and drug treatment, and parenting classes while in prison, which the DCS worker verified.

---

[1] The mother does not dispute that the responsibilities in the plan were reasonable.

Mother had made some progress in the beginning of the latest custody period, and the child was allowed to go home on a trial basis, but then had to be taken again in August 2001 because of the circumstances in which the mother and child were living. The mother was incarcerated soon thereafter, and did not get out of prison until April of 2002. The mother had been out of prison for five months at the time of the first hearing, and for eight months at the time of the final hearing.

The conditions which led to the original removal from custody were that the mother left the child home alone. The child was returned to the mother on a trial basis after that, however, he was removed again when the mother's boyfriend left and she had no job, and the child had missed the first few days of school. While the mother had made some progress, given her past history, the Trial Court was justified in finding that the conditions would not be remedied. Moreover, there was clear and convincing evidence to support the first basis of removal. *See In re C.W.W.*, 37 S.W.3d 467 (Tenn. Ct. App. 2000).

Mother's final issue is that DCS did not make reasonable efforts to help her, which is required by Tenn. Code Ann. §36-1-113 (I)(2).[2] This statute requires the showing that reasonable efforts were made by DCS to help the parent make a change, and that the parent failed to do so for a duration of time.

The mother was incarcerated immediately after the trial home visit was terminated, and did not get out of prison until April 2002. Obviously, there was little DCS could do to help her during her incarceration. After she was released from prison, the record does not establish what efforts DCS made to help the mother make an adjustment, but the DCS worker explained that once the termination petition was filed (before the mother was released from prison), there was more of a concentration on adoption. The DCS worker explained, "I'm not able to make her get the housing, the job, or to go to Fortwood and continue with her counseling. These things she can do if she wanted to do those things."

The record establishes that DCS has made reasonable efforts toward reuniting the family in the past, and the Court found that DCS made reasonable efforts, based upon all that had been done in the past. The evidence does not preponderate against that finding. Tenn. R. App. P. 13(d). As this Court has previously recognized, DCS must make "reasonable" efforts, not "herculean" efforts. *DCS v. Malone,* 1998 WL 46461 (Tenn. Ct. App. Feb. 5, 1998). In this regard, *see* Tenn. Code. Ann. § 36-1-113(I).

Thus, any efforts made by DCS and the results thereof, are only one factor of many

---

[2] *See DCS v. Malone*, 1998 WL 46461 (Tenn. Ct. App. Feb. 5, 1998)(Tenn. Code Ann. §36-1-113 provides the proper framework for this issue in a termination proceeding); *see also DCS v. Shortt*, 2003 WL 21338699 (Tenn. Ct. App. June 10, 2003).

which the Trial Court must consider.[3]  In this case, the Trial Court found that the child's best interests would be served by terminating parental rights, based upon her findings, with an emphasis on the child's recent stabilization in the foster home and his stated preference to remain there. The Court stressed that the child was now doing well, and after having been disappointed by mother on so many occasions, he deserved the stability and consistency that he was getting in his foster care placement.  The Court felt that it would be detrimental to the child's emotional health to change his environment at that time, and the evidence does not preponderate against the Trial Court's findings on these issues.  Tenn. R. App. P. 13(d).

A statutory basis for terminating parental rights was established by clear and convincing evidence, and termination was shown to be in the child's best interests based upon the statutory criteria.  The Trial Court acted properly in terminating the mother's parental rights, and we affirm the Judgment.

The cost of the appeal is assessed to appellant.

_____
HERSCHEL PICKENS FRANKS, J.

---

[3]DCS was acting under statutory mandate which requires a petition to termination parental rights "shall" be filed by the Department when a child has been in custody for 15 of the last 22 months.  Tenn. Code Ann. § 36-1-113(h)(1)(A).